IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **REBECCA WEBBER, et al.** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: **05-PT-1883-M** |
| ) | |
| **FLEETWOOD HOMES OF** ) | |
| **GEORGIA, et al.** ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

This cause comes on to be heard upon defendants' Motion to Strike Fictitious Parties filed by defendants Fleetwood Homes of Georgia, Inc., Johnnie's Homes, and James Zachero, on September 6, 2005.

### ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiff Rebecca Webber is a resident of Jefferson County, Alabama. She is the mother of plaintiff Stephanie Wilson, who is a resident of St. Clair County, Alabama. On or about November 26, 2002, Webber purchased a mobile home from defendant Johnnie's Homes, Inc., located in Pell City, Alabama, as part of a "land/home" package deal for $96,096.11 for Wilson. The mobile home was manufactured by defendant Fleetwood Homes of Georgia, Inc., located in Willacoochee, Georgia. On August 1, 2005, Webber and Wilson filed this action in the St. Clair County, Alabama, Circuit Court.

In Count One of the complaint, titled "Breach of Express Warranty (Fleetwood)", Webber and Wilson allege that Johnnie's Homes expressly warranted the home in writing against defects

in material and craftsmanship. Webber and Wilson claim that the mobile home in question was defective in both respects. They further allege that they notified Fleetwood of these defects, and gave both Johnnie's Homes and Fleetwood a reasonable opportunity to cure the defects. In the alternative, Webber and Wilson claim that both Johnnie's and Fleetwood were aware, or should have been aware, of the defects. Also in the alternative, Webber and Wilson argue that the defects cannot be cured.

In Count Two, titled "Breach of Implied Warranty (Fleetwood)", Webber and Wilson argue that Fleetwood impliedly warranted to them that the home was "merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product such as a manufactured home." Webber and Wilson claim that the mobile home contained substantial defects upon delivery. They further claim that they notified Fleetwood of the defects, and gave Fleetwood a reasonable opportunity to repair the defects. Alternatively, Webber and Wilson argue that Fleetwood was aware, or should have been aware, of the defects. Also in the alternative, they claim that the defects cannot be cured.

In Count Three, titled "Violation of the Magnuson Moss Warranty Act (Fleetwood)", Webber and Wilson allege that Fleetwood provided a written warranty and implied warranty on the manufactured home. According to Webber and Wilson, this sales transaction was governed by the Magnuson Moss Warranty Act, 15 U.S.C. § 1301, *et seq*. They argue that Fleetwood's warranty did not contain a binding arbitration provision or clause. Furthermore, according to the plaintiffs, Fleetwood breached the warranty by failing to repair defects in the mobile home. Webber and Wilson claim that they notified Fleetwood of the defects, and gave a reasonable opportunity for Fleetwood to repair the defects. In the alternative, they argue that Fleetwood was aware, or should have been aware, of the defects at the time of sale. Also in the alternative,

Webber and Wilson claim that the alleged defects cannot be cured.

In Count Four, titled "Breach of Express Warranty (Johnnie's Homes)", Webber and Wilson claim that Johnnie's Homes, Inc., expressly warranted the home in writing. They argue that the home contained defects in material and workmanship at the time of delivery and/or during the warranty period. Furthermore, according to Webber and Wilson, they gave Johnnie's notice of the defects, and afforded Johnnie's a reasonable opportunity to comply with the warranty and repair the defects. Alternatively, they claim that the defects cannot be cured. In Count Five, titled "Breach of Implied Warranties (Johnnie's Homes)", Webber and Wilson claim that Johnnie's Homes impliedly warranted that the mobile home was "merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product such as a manufactured home." Additionally, they argue that Johnnie's Homes expressly or impliedly warranted that the mobile home would not be damaged in delivery and that the home would be properly set and installed. According to Webber and Wilson, Johnnie's Homes breached this warranty.

In Count Six, titled "Violation of the Magnuson Moss Warranty Act (Johnnie's Homes)", Webber and Wilson argue that their claims meet all the requirements set forth under that Act, and that Johnnie's breached the written warranty by failing to repair defects in the mobile home. According to Webber and Wilson, that warranty did not contain a binding arbitration clause. Furthermore, they claim that they both notified Johnnie's of the defects and afforded Johnnie's a reasonable opportunity to repair them.

In Counts Seven through Eleven, titled "Third Party Fraud (James Zachero)", "Negligent Set Up (James Zachero)", "Wanton Set Up (James Zachero)", "Suppression/Failure to Disclose (James Zachero)", and "Breach of Implied Warranty (James Zachero)", Webber and Wilson

allege that James Zachero, d/b/a Tony Mobile Home Movers, wronged them in a number of ways. They argue that he intentionally, recklessly, and/or innocently made misrepresentations of material fact when he claimed that he had the skill, training and experience necessary to deliver, set up, and/or install a mobile home. They claim that he did so knowingly. They claim that they relied on his representations to their detriment. Webber and Wilson further allege that Zachero was negligent and wanton in his set-up of their mobile home, resulting in damage to that home. They also claim that Zachero suppressed and/or failed to disclose the damage caused to that home during installation. Finally, Webber and Wilson argue that Zachero impliedly or expressly warranted that the home would not be damaged during installation, and that he breached this warranty.

On September 6, 2005, defendants Fleetwood, Johnnie's, and Zachero removed this action from St. Clair Circuit Court to the Northern District of Alabama. In their notice of removal, the defendants claim that, since the plaintiffs allege that the home was damaged during delivery, this court has jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706, to the Interstate Commerce Act, which "creates a uniform rule for liability when goods are shipped in interstate commerce." *See Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002). All other matters alleged in the complaint fall under the court's "supplemental jurisdiction" authorized by 28 U.S.C. § 1367. Furthermore, according to the defendants, the plaintiffs' claim meets the amount in controversy requirement of an amount exceeding $10,000 as established by 28 U.S.C. § 1337 (a). Accordingly, the defendants argue that removal under 28 U.S.C. § 1441 (b) is appropriate.

## FICTITIOUS PARTY STANDARD

As a general rule, fictitious party practice is not authorized by the Federal Rules of Civil

Procedure or any other federal statute. *Weeks v. Benton*, 649 F. Supp. 1297, 1298 (S.D. Ala. 1986). Although "fictitious parties are proper under certain limited circumstances, at least until reasonable discovery permits the actual defendants to assume their places," *Klingler v. Yamaha Motor Corp., U.S.A.,* 738 F. Supp. 898, 910 (E.D. Pa. 1990), defendants must actually exist and be described in such a way that notice and service requirements can be met. *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992) (citing Fed. R. Civ. Pro. 10(a)). *See also* 1988 Amendments, Fed. R. Civ. Pro. 10 (a) ("permit[ting] other (and named) defendants to remove the case without having to determine, and without waiting to determine, the citizenship of the fictitious party."). If a plaintiff "later ascertains the names of additional persons he wishes to join as defendants, the Federal Rules of Civil Procedure provide a way of doing so." *Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967). "The proper method of adding new parties to the federal courts is found in Rule 15 of the Federal Rules of Civil Procedure, with particular attention to Rule 15 (c) concerning the relation back to the original pleading." *Fifty Associates v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1191 (9th Cir. 1970).

## ARGUMENTS[1]

**I.      Defendants Fleetwood Homes', Johnnie's Homes' and Zachero's  Motion.**

Defendants Fleetwood Homes, Johnnie's Homes and Zachero (hereinafter "defendants") argue that this court should strike the fictitious parties set forth in the plaintiffs' complaint because fictitious party pleading is not generally recognized under the Federal Rules of Civil Procedure. In support of this claim, the defendants cite Fed. R. Civ. P. 10 (a), which states:

> Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint

---

[1] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

>the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party with an appropriate indication of other parties.

Fed. R. Civ. Pro. 10 (a) (West 2005).

The defendants also rely on 28 U.S.C. § 1441 (a), which states:

>Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441 (a) (West 2005).

In addition to the above statutory and rules-based authority, the defendants rely on the following:

>After the case was removed to federal court...plaintiff filed a motion for leave to amend the complaint to add Induction Systems as a defendant. The court found that there is no fictitious party practice in federal court, and that the Alabama procedural rules did not apply to amendments which occurred after removal from the state court. Furthermore, the court found there could be no "relation back" because the motion to amend did not "substitute" Induction Systems for a sued fictitious party, but merely added a new party to the action.

*Rommell v. Automobile Racing Club of America, Inc.*, 964 F.2d 1090, 1098 n. 14 (11th Cir. 1992).

Finally, the defendants cite *Weeks v. Benton*, 649 F. Supp. 1297, 1298 (S.D. Ala. 1986), for its holding that "[f]ictitious party practice is not authorized by the Federal Rules of Civil Procedure or any other federal statute." *Id*.

**II.    Plaintiffs' Response to Defendants' Motion.**

The plaintiffs, Webber and Wilson, did not respond to the defendants' Motion to Strike Fictitious Parties.

## CONCLUSIONS OF THE COURT

The court will strike the fictitious parties. The court does not presently reach the issue of subject matter jurisdiction. There may be a question as to whether Fleetwood would be covered

by the Carmack Amendment. Any such issue, if raised, should be by another motion. This judge has earlier ruled that removal may be based on the Carmack Amendment. Other judges have ruled to the contrary. This court has not researched possibly later 11th Circuit rulings. The real issue may be whether Fleetwood is a "carrier". There may be other issues.

    This 21st of October, 2005.

                                            **ROBERT B. PROPST**
                      **SENIOR UNITED STATES DISTRICT JUDGE**