**FILED**
2005 Oct-26  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **REBECCA WEBBER, et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **05-PT-1883-M** |
| | ) | |
| **FLEETWOOD HOMES OF** | ) | |
| **GEORGIA, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This cause comes on to be heard upon defendant's Motion to Dismiss, or in the

Alternative, Motion to Compel Binding Arbitration and Motion to Stay filed by defendant

Fleetwood Homes of Georgia, Inc., on September 19, 2005.

**ALLEGED FACTS AND PROCEDURAL HISTORY**

Plaintiff Rebecca Webber is a resident of Jefferson County, Alabama. She is the mother

of plaintiff Stephanie Wilson, who is a resident of St. Clair County, Alabama. On or about

November 26, 2002, Webber purchased a mobile home from defendant Johnnie's Homes, Inc.,

located in Pell City, Alabama, as part of a "land/home" package deal for $96,096.11 for Wilson.

The mobile home was manufactured by defendant Fleetwood Homes of Georgia, Inc., located in

Willacoochee, Georgia. The mobile home came with a two year limited warranty, which stated,

among other things:

> If your concerns are not satisfactorily remedied through the steps set out above, you
> are entitled to have your dispute settled through binding arbitration as set forth below.
> In the event of any dispute or claim, arising out of, or in connection with the design
> construction, warranty or repair of any product, the conformity of the product, the

merchantability of the product, whether such product is or is not "new," any representations, promises, undertakings or covenants made or allegedly made by the manufacturer in connection with or arising out of any transaction or undertaking between the manufacturer and any direct or subsequent purchaser, the manufacturer and the purchaser of this product agree to submit any such dispute or claim to binding arbitration pursuant to the provisions of 9 USC 1, et. seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing.

Webber and Wilson requested and received a number of warranty repairs for the mobile home.[1] On August 1, 2005, Webber and Wilson filed this action in the St. Clair County, Alabama, Circuit Court.

In Count One of the complaint, titled "Breach of Express Warranty (Fleetwood)", Webber and Wilson allege that Johnnie's Homes expressly warranted the home in writing against defects in material and craftsmanship. Webber and Wilson claim that the mobile home in question was defective in both respects. They further allege that they notified Fleetwood of these defects, and gave both Johnnie's Homes and Fleetwood a reasonable opportunity to cure the defects. In the alternative, Webber and Wilson claim that both Johnnie's and Fleetwood were aware, or should have been aware, of the defects. Also in the alternative, Webber and Wilson argue that the defects cannot be cured.

In Count Two, titled "Breach of Implied Warranty (Fleetwood)", Webber and Wilson argue that Fleetwood impliedly warranted to them that the home was "merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product such as a manufactured home." Webber and Wilson claim

---

[1]According to defendant Fleetwood Homes, Webber and Wilson requested and received warranty repairs on the following dates: October 28, 2002; December 30, 2002; January 27, 2003; March 20, 2003; March 25, 2003; July 9, 2003; July 16, 2003; July 22, 2003; September 25, 2003; October 7, 2003; January 5, 2004; March 3, 2004; November 10, 2004; and December 9, 2004.

that the mobile home contained substantial defects upon delivery. They further claim that they notified Fleetwood of the defects, and gave Fleetwood a reasonable opportunity to repair the defects. Alternatively, Webber and Wilson argue that Fleetwood was aware, or should have been aware, of the defects. Also in the alternative, they claim that the defects cannot be cured.

In Count Three, titled "Violation of the Magnuson Moss Warranty Act (Fleetwood)", Webber and Wilson allege that Fleetwood provided a written warranty and implied warranty on the manufactured home. According to Webber and Wilson, this sales transaction was governed by the Magnuson Moss Warranty Act, 15 U.S.C. § 1301, *et seq*. They argue that Fleetwood's warranty did not contain a binding arbitration provision or clause. Furthermore, according to the plaintiffs, Fleetwood breached the warranty by failing to repair defects in the mobile home. Webber and Wilson claim that they notified Fleetwood of the defects, and gave a reasonable opportunity for Fleetwood to repair the defects. In the alternative, they argue that Fleetwood was aware, or should have been aware, of the defects at the time of sale. Also in the alternative, Webber and Wilson claim that the alleged defects cannot be cured.

In Count Four, titled "Breach of Express Warranty (Johnnie's Homes)", Webber and Wilson claim that Johnnie's Homes, Inc., expressly warranted the home in writing. They argue that the home contained defects in material and workmanship at the time of delivery and/or during the warranty period. Furthermore, according to Webber and Wilson, they gave Johnnie's notice of the defects, and afforded Johnnie's a reasonable opportunity to comply with the warranty and repair the defects. Alternatively, they claim that the defects cannot be cured. In Count Five, titled "Breach of Implied Warranties (Johnnie's Homes)", Webber and Wilson claim that Johnnie's Homes impliedly warranted that the mobile home was "merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a

consumer concerning a new product such as a manufactured home." Additionally, they argue that Johnnie's Homes expressly or impliedly warranted that the mobile home would not be damaged in delivery and that the home would be properly set and installed. According to Webber and Wilson, Johnnie's Homes breached this warranty.

In Count Six, titled "Violation of the Magnuson Moss Warranty Act (Johnnie's Homes)", Webber and Wilson argue that their claims meet all the requirements set forth under that Act, and that Johnnie's breached the written warranty by failing to repair defects in the mobile home. According to Webber and Wilson, that warranty did not contain a binding arbitration clause. Furthermore, they claim that they both notified Johnnie's of the defects and afforded Johnnie's a reasonable opportunity to repair them.

In Counts Seven through Eleven, titled "Third Party Fraud (James Zachero)", "Negligent Set Up (James Zachero)", "Wanton Set Up (James Zachero)", "Suppression/Failure to Disclose (James Zachero)", and "Breach of Implied Warranty (James Zachero)", Webber and Wilson allege that James Zachero, d/b/a Tony Mobile Home Movers, wronged them in a number of ways. They argue that he intentionally, recklessly, and/or innocently made misrepresentations of material fact when he claimed that he had the skill, training and experience necessary to deliver, set up, and/or install a mobile home. They claim that he did so knowingly. They claim that they relied on his representations to their detriment. Webber and Wilson further allege that Zachero was negligent and wanton in his set-up of their mobile home, resulting in damage to that home. They also claim that Zachero suppressed and/or failed to disclose the damage caused to that home during installation. Finally, Webber and Wilson argue that Zachero impliedly or expressly warranted that the home would not be damaged during installation, and that he breached this warranty.

On September 6, 2005, defendants Fleetwood, Johnnie's, and Zachero removed this

action from St. Clair Circuit Court to the Northern District of Alabama. In their notice of

removal, the defendants claim that, since the plaintiffs allege that the home was damaged during

delivery, this court has jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706, to the

Interstate Commerce Act, which "creates a uniform rule for liability when goods are shipped in

interstate commerce." *See Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002).

All other matters alleged in the complaint fall under the court's "supplemental jurisdiction"

authorized by 28 U.S.C. § 1367. Furthermore, according to the defendants, the plaintiffs' claim

meets the amount in controversy requirement of an amount exceeding $10,000 as established by

28 U.S.C. § 1337 (a). Accordingly, the defendants argue that removal under 28 U.S.C. § 1441 (b)

is appropriate.

## ARBITRATION STANDARD

The Federal Arbitration Act ("FAA") was designed "to reverse the longstanding judicial

hostility to arbitration agreements that had existed at English common law and had been adopted

by American courts, and to place arbitration agreements upon the same footing as other

contracts." *Paladino v. Avnet Computer Techs., Inc.* 134 F.3d 1054, 1057 (11th Cir. 1998)

(internal quotations and citations omitted).  The FAA does not "require parties to arbitrate when

they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from

excluding certain claims from the scope of their arbitration agreement." *American Express Fin.*

*Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir.1997) (citations omitted).  However,

"the FAA creates a presumption in favor of arbitrability; so, parties must clearly express their

intent to exclude categories of claims from their arbitration agreement." *Paladino,* 134 F.3d at

1057.  Nonetheless, "courts are not to twist the language of the contract to achieve a result which

is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419-20 (11th Cir.1990).

**ARGUMENTS**[2]

**I.     Defendant Fleetwood Homes' Motion.**

Fleetwood claims that it manufactured the home in question in Georgia using material from outside of Georgia, including plumbing parts, electrical parts, aluminum and steel products, appliances, wood products, and fabrics. Fleetwood further claims that these materials, as well as the completed home, were transported via federal and interstate highways from Georgia to the retailer's sales location in Alabama and later to Webber and Wilson's lot. Fleetwood cites 42 U.S.C. § 5401, et seq. (the National Manufactured Housing Construction and Safety Standards Act of 1974), for its assertion that  the manufactured housing industry is heavily regulated by the federal government. These circumstances, according to Fleetwood, "clearly establish" a transaction that involved commerce to invoke the provisions of the Federal Arbitration Act (FAA).

According to Fleetwood, the FAA provides that a "written provision in...a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or...an agreement in writing to submit to arbitration an existing controversy arising out of such conduct...shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Fleetwood claims that the United States Supreme Court has ruled in a case arising in Alabama that an agreement containing an arbitration provision which involves or affects interstate commerce is specifically enforceable under the FAA. *Allied-Bruce Terminix*

---

[2] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

*Cos. v. Dobson*, 513 U.S. 265 (1995).

Fleetwood claims that the Supreme Court, in *Terminix*, interpreted the phrase "involving commerce" in the FAA as the functional equivalent of the phrase "affecting commerce." *Id*. at 273-274. Fleetwood cites *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) for its assertion that "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' - - that is, 'within the flow of interstate commerce.'" *Id*. at 56. Furthermore, according to Fleetwood, "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if the economic activity in question would, in the aggregate, represent 'a general practice...subject to federal control.'" *Id*. at 56-57 (*citing Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219 (1948); *Perez v. United States*, 402 U.S. 146 (1971); *Wickard v. Filburn*, 317 U.S. 111 (1942)). Fleetwood argues that the applicable test is whether the transaction in issue "involved commerce" and therefore "trigger[ed] application of the FAA." *Edward D. Jones & Co., LP v. Wehby*, 882 So. 2d 832, 836 (Ala. 2003).

Fleetwood asserts that, since the transaction involves commerce, the next issue is whether the specific claims in this case fall within the scope of the arbitration agreement executed by the plaintiffs. Fleetwood cites *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), and *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), for its claims that Congress declared a national policy favoring arbitration and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Fleetwood claims that *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1270 (11th Cir. 2002), controls when, like in this case, there is both an arbitration agreement and a claim put forth under the Magnuson-Moss Warranty Act (MMWA). In *Davis*, Fleetwood asserts that Southern Energy, the manufacturer of

the home, filed a Motion to Compel Arbitration based upon the plaintiffs signing an arbitration provision contained within the home's written warranty. In the Complaint, according to Fleetwood, the plaintiffs alleged breach of express warranty and violation of the Magnuson-Moss Warranty Act. Fleetwood claims that Davis argued that the Magnuson-Moss Warranty Act prohibited binding arbitration. However, the Eleventh Circuit, according to Fleetwood, held that written warranty claims arising under the MMWA may be subject to valid binding arbitration agreements. *Id*. at 1280.

According to Fleetwood, the Supreme Court of Alabama has held in a case with facts similar to this case that a homeowner's acceptance of benefits under a warranty containing an arbitration provision constitutes acceptance of the arbitration provision. Fleetwood cites *Southern Energy Homes, Inc. v. Ard*, 772 So.2d 1131, 1134 (Ala. 2000), for this claim. According to Fleetwood, the *Ard* Court held that the Ards were contractually bound to the arbitration provision for two reasons. First, Southern Energy established that the Ards accepted benefits under the warranty. Second, the Ards sued Southern Energy on the theory, among others, of express warranty. The *Ard* Court, Fleetwood notes, stated that "a plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions." *Id*. Fleetwood further argues that the MMWA does not invalidate arbitration provisions. *Id.* at 1135.

Fleetwood claims that the plaintiffs requested and received warranty repairs on numerous occasions. Furthermore, according to Fleetwood, the plaintiffs' complaint states causes of action for, *inter alia*, breach of warranty. Fleetwood argues that the plaintiffs cannot reap the benefits of the warranty while simultaneously repudiating its conditions.

According to Fleetwood, once a court has determined that there is a valid, enforceable arbitration agreement, the proper remedy is for the court to issue an Order compelling arbitration.

*Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222 (2d Cir. 1980); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140 (5th Cir. 1985). Fleetwood claims that the court may, coupled with the order compelling arbitration, stay all proceedings, including discovery, pending the conclusion of the arbitration. *See* 9 U.S.C. § 3; *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987) ("if arbitration is indicated by the contract, then a stay is required by the statute"). Fleetwood argues in the alternative that, since all of Webber and Wilson's claims are subject to arbitration, this court can dismiss the complaint without prejudice. *See, e.g., Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992).

## II.   Plaintiffs' Response to Defendants' Motion.

The plaintiffs, Webber and Wilson, did not respond to the defendant's Motion to Dismiss, or in the Alternative, Motion to Compel Binding Arbitration and Motion to Stay.

## CONCLUSIONS OF THE COURT

Since the defendant Fleetwood's arguments have merit and the plaintiffs have not responded, the court will enforce the arbitration agreement.

This 26th of October, 2005.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**