IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **REBECCA WEBBER, et al.** )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>**FLEETWOOD HOMES OF** )<br>**GEORGIA, et al.** )<br> )<br>Defendants. ) | Civil Action No.: **05-PT-1883-M** |

### MEMORANDUM OPINION

This cause comes on to be heard upon defendant's Motion to Remand filed on October 4, 2005.

### ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiff Rebecca Webber is a resident of Jefferson County, Alabama. She is the mother of plaintiff Stephanie Wilson, who is a resident of St. Clair County, Alabama. On or about November 26, 2002, Webber purchased a mobile home from defendant Johnnie's Homes, Inc., located in Pell City, Alabama, as part of a "land/home" package deal for $96,096.11 for Wilson. The mobile home was manufactured by defendant Fleetwood Homes of Georgia, Inc., located in Willacoochee, Georgia. The mobile home came with a two year limited warranty, which stated, among other things:

> If your concerns are not satisfactorily remedied through the steps set out above, you are entitled to have your dispute settled through binding arbitration as set forth below. In the event of any dispute or claim, arising out of, or in connection with the design construction, warranty or repair of any product, the conformity of the product, the merchantability of the product, whether such product is or is not "new," any representations, promises, undertakings or covenants made or allegedly made by the

>manufacturer in connection with or arising out of any transaction or undertaking between the manufacturer and any direct or subsequent purchaser, the manufacturer and the purchaser of this product agree to submit any such dispute or claim to binding arbitration pursuant to the provisions of 9 USC 1, et. seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing.

Webber and Wilson requested and received a number of warranty repairs for the mobile home.[1] On August 1, 2005, Webber and Wilson filed this action in the St. Clair County, Alabama, Circuit Court.

In Count One of the complaint, titled "Breach of Express Warranty (Fleetwood)", Webber and Wilson allege that Johnnie's Homes expressly warranted the home in writing against defects in material and craftsmanship. Webber and Wilson claim that the mobile home in question was defective in both respects. They further allege that they notified Fleetwood of these defects, and gave both Johnnie's Homes and Fleetwood a reasonable opportunity to cure the defects. In the alternative, Webber and Wilson claim that both Johnnie's and Fleetwood were aware, or should have been aware, of the defects. Also in the alternative, Webber and Wilson argue that the defects cannot be cured.

In Count Two, titled "Breach of Implied Warranty (Fleetwood)", Webber and Wilson argue that Fleetwood impliedly warranted to them that the home was "merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product such as a manufactured home." Webber and Wilson claim that the mobile home contained substantial defects upon delivery. They further claim that they

---

[1] According to defendant Fleetwood Homes, Webber and Wilson requested and received warranty repairs on the following dates: October 28, 2002; December 30, 2002; January 27, 2003; March 20, 2003; March 25, 2003; July 9, 2003; July 16, 2003; July 22, 2003; September 25, 2003; October 7, 2003; January 5, 2004; March 3, 2004; November 10, 2004; and December 9, 2004.

notified Fleetwood of the defects, and gave Fleetwood a reasonable opportunity to repair the defects. Alternatively, Webber and Wilson argue that Fleetwood was aware, or should have been aware, of the defects. Also in the alternative, they claim that the defects cannot be cured.

In Count Three, titled "Violation of the Magnuson Moss Warranty Act (Fleetwood)", Webber and Wilson allege that Fleetwood provided a written warranty and implied warranty on the manufactured home. According to Webber and Wilson, this sales transaction was governed by the Magnuson Moss Warranty Act, 15 U.S.C. § 1301, *et seq*. They argue that Fleetwood's warranty did not contain a binding arbitration provision or clause. Furthermore, according to the plaintiffs, Fleetwood breached the warranty by failing to repair defects in the mobile home. Webber and Wilson claim that they notified Fleetwood of the defects, and gave a reasonable opportunity for Fleetwood to repair the defects. In the alternative, they argue that Fleetwood was aware, or should have been aware, of the defects at the time of sale. Also in the alternative, Webber and Wilson claim that the alleged defects cannot be cured.

In Count Four, titled "Breach of Express Warranty (Johnnie's Homes)", Webber and Wilson claim that Johnnie's Homes, Inc., expressly warranted the home in writing. They argue that the home contained defects in material and workmanship at the time of delivery and/or during the warranty period. Furthermore, according to Webber and Wilson, they gave Johnnie's notice of the defects, and afforded Johnnie's a reasonable opportunity to comply with the warranty and repair the defects. Alternatively, they claim that the defects cannot be cured. In Count Five, titled "Breach of Implied Warranties (Johnnie's Homes)", Webber and Wilson claim that Johnnie's Homes impliedly warranted that the mobile home was "merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product such as a manufactured home." Additionally, they argue that

Johnnie's Homes expressly or impliedly warranted that the mobile home would not be damaged in delivery and that the home would be properly set and installed. According to Webber and Wilson, Johnnie's Homes breached this warranty.

In Count Six, titled "Violation of the Magnuson Moss Warranty Act (Johnnie's Homes)", Webber and Wilson argue that their claims meet all the requirements set forth under that Act, and that Johnnie's breached the written warranty by failing to repair defects in the mobile home. According to Webber and Wilson, that warranty did not contain a binding arbitration clause. Furthermore, they claim that they both notified Johnnie's of the defects and afforded Johnnie's a reasonable opportunity to repair them.

In Counts Seven through Eleven, titled "Third Party Fraud (James Zachero)", "Negligent Set Up (James Zachero)", "Wanton Set Up (James Zachero)", "Suppression/Failure to Disclose (James Zachero)", and "Breach of Implied Warranty (James Zachero)", Webber and Wilson allege that James Zachero, d/b/a Tony Mobile Home Movers, wronged them in a number of ways. They argue that he intentionally, recklessly, and/or innocently made misrepresentations of material fact when he claimed that he had the skill, training and experience necessary to deliver, set up, and/or install a mobile home. They claim that he did so knowingly. They claim that they relied on his representations to their detriment. Webber and Wilson further allege that Zachero was negligent and wanton in his set-up of their mobile home, resulting in damage to that home. They also claim that Zachero suppressed and/or failed to disclose the damage caused to that home during installation. Finally, Webber and Wilson argue that Zachero impliedly or expressly warranted that the home would not be damaged during installation, and that he breached this warranty.

On September 6, 2005, defendants Fleetwood, Johnnie's, and Zachero removed this

action from St. Clair Circuit Court to the Northern District of Alabama. In their notice of removal, the defendants claim that, since the plaintiffs allege that the home was damaged during delivery, this court has jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706, to the Interstate Commerce Act, which "creates a uniform rule for liability when goods are shipped in interstate commerce." *See Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002). All other matters alleged in the complaint fall under the court's "supplemental jurisdiction" authorized by 28 U.S.C. § 1367. Furthermore, according to the defendants, the plaintiffs' claim meets the amount in controversy requirement of an amount exceeding $10,000 as established by 28 U.S.C. § 1337 (a). Accordingly, the defendants argue that removal under 28 U.S.C. § 1441 (b) is appropriate.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d

1368, 1373 (11th Cir. 1998).  An anticipated or even inevitable federal defense generally will not support removal.  *Id*. at 1373 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)).  The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).  When multiple defendants are involved, all defendants must consent to removal.  *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS[2]

I.      **Plaintiffs' Motion to Remand.**

According to Webber and Wilson, they did not state a cause of action under the Carmack Amendment, nor do the underlying facts give rise to a claim under the Carmack Amendment. They characterize the defendants' removal of this action as "based solely on the fact that the Plaintiffs claim damages for damages that occurred during the delivery of this home." Webber and Wilson argue that the Carmack Amendment imposes liability on common carriers for the actual loss of or damage to shipments in interstate commerce. 49 U.S.C. § 14706(a)(1); *Siemens Power Transmission & Distrib. v. Norfolk & Southern Ry.*, 2005 U.S. App. LEXIS 17202 (11th Cir. 2005); *Reeves v. Mayflower Transit*, 87 F. Supp. 2d 1251, 1252 (D. Ala. 1999). According to Webber and Wilson, the purpose of the Carmack Amendment is to protect shippers against the negligence of interstate carriers and to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipping of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950); *Fuente Cigar, Ltd. v. Roadway Express, Inc.*, 961 F.2d 1558, 1559 (11th Cir. 1992). The Carmack Amendment,

---

[2] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

Webber and Wilson claim, supersedes all state laws purporting to govern the liability of interstate carriers for goods lost or damaged during interstate shipping. *Bear MGC Cutlery Co. v. Estes Express Lines, Inc.*, 132 F. Supp. 2d 937, 946 (N.D. Ala. 2001).

Though Webber and Wilson concede that they seek to recover for damages that occurred as a result of the improper delivery and set up of the home, they argue that those damages are sought against defendant Zachero. Zachero, according to Webber and Wilson, transported the home from the dealer's lot in Pell City to their lot in Pell City. At no point, Webber and Wilson claim, did Zachero ever cross state lines. Based on this, they argue that there is no indication that Zachero ever placed the home in interstate commerce. Therefore, according to Webber and Wilson, there are no facts alleged that would give rise to a claim under the Carmack Amendment.

In addition to the above, Webber and Wilson argue that "federal question" jurisdiction under 28 U.S.C. § 1337 is inappropriate because they are specifically limiting their claim for damages to the home resulting during interstate transportation to "less than $10,000, exclusive of interest and costs." Specifically, Webber and Wilson claim they are unaware of any damage that occurred to their mobile home during interstate transportation. They argue that the damage complained of occurred intrastate. According to Webber and Wilson, this specific limiting of damages to less than $10,000, exclusive of interest and costs, makes federal jurisdiction under 28 U.S.C. § 1337 inappropriate, even if the Carmack Amendment did apply.

**II.     Defendants' Response to Plaintiffs' Motion to Remand.**

According to the defendants, Webber and Wilson contend that this matter does not involve interstate commerce because the alleged damage to the subject home occurred while the home was being transported by defendant Zachero from the retail lot in Pell City, Alabama, to the plaintiffs' lot in Pell City, Alabama. The defendants argue that the United States Supreme

Court has considered a similar argument and ruled that the determination whether a transaction is "incident to an interstate journey within the ambit of the Interstate Commerce Act" is to be made on the basis of the "character of the commerce" as revealed by the "destination intended by the passenger when he begins his journey and known to the carrier." *Greenwald v. Pan American World Airways, Inc.*, 547 F. Supp. 159, 161-162 (S.D.N.Y. 1982) (quoting *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 131 (1953)).

In *Greenwald*, the defendants assert, the plaintiff shipped household and personal goods from Venezuela to Detroit, Michigan. There were numerous carriers along the way. Frisbie Moving & Storing Co., Inc., delivered the goods to the plaintiff's home in Detroit. Frisbie, according to the defendants, argued that the Interstate Commerce Act did not apply to the intrastate leg of an interstate shipment. The *Greenwald* court, quoting *Nothnagle*, held that "neither continuity of interstate movement nor isolated segments of the trip can be decisive." *Greenwald*, 547 F. Supp. at 162. The *Greenwald* court went on to hold that "the fact that the segment of transportation performed by Frisbie was intrastate does not remove the action from the ambit of the Interstate Commerce Act." *Id.* According to the defendants, the character of the commerce at issue in *Greenwald* was interstate.

The defendants argue that Webber and Wilson cannot "pick and choose that part of an interstate transaction which happens to be the intrastate portion to try and prove the matter is not subject to federal jurisdiction." The defendants note that Webber and Wilson expressly limit their damages regarding transportation damage which occurred during interstate commerce to $10,000. The defendants respectfully request that this court deny Webber and Wilson's Motion to Remand unless they expressly limit their damages to less than $10,000 for any transportation damage, "whenever and wherever it occurred."

**III.     Plaintiffs' Reply.**

The plaintiffs, Webber and Wilson, did not file a reply to the defendants' Response to Plaintiffs' Motion to Remand.

## CONCLUSIONS OF THE COURT

In a recorded phone conversation on November 8, 2005, the defendants acknowledged:

(1) The only purported basis for removal is the Carmack Amendment.

(2) At the time the plaintiffs purchased the mobile home, title had passed from Fleetwood to Johnnie's Homes, Inc.

(3) After the plaintiffs purchased the home, it was transported from Johnnie's Homes, Inc., in Alabama to the plaintiffs in Alabama by Zachero.

The court notes that the only claims of damage during delivery are against Zachero.

The court starts with the assumption that appropriate Carmack Amendment cases involve super preemption and are, thus, removable. *Smith v. United Parcel Service*, 296 F.3d 1244, 1247 (11th Cir. 2002); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 774 -775 (5th Cir. 2003); *Bear MGC Cutlery Co. v. Estes Express Lines, Inc.*, 132 F. Supp. 2d 937, 947-48 (N.D. Ala. 2001). This case, however, does not implicate the Carmack Amendment. The only transportation and delivery at issue is intrastate.

In *Bracht v. San Antonio & A. P. Ry. Co.*, 254 U.S. 489 (1921), a carrier was charged with moving a carload of vegetables between two points in the same state. Once the vegetables reached the in-state destination, they were sent out-of-state, where they arrived in poor condition. The plaintiff brought suit against the originating carrier under the Carmack Amendment. The Court held that the Carmack Amendment was inapplicable:

[The carrier's] contract appears to have related only to a movement between points

> in the same state. It had no notice or reason to suppose that the freight would pass beyond the destination specified. The original undertaking was an intrastate transaction, subject, of course to any applicable rules and regulations prescribed by state authority. The record discloses none; and we are unable to say as a matter of federal law that the tariff schedules for interstate shipments or the provisions of the Interstate Commerce Act constituted part of the agreement...Here neither shipper nor [originating carrier] had in contemplation any movement beyond the point specified, and the contract between them must be determined from the original bill of lading and the local laws and regulations.

*Id.* at 490-491.

In *Baltimore & O.S.W.R. Co. v. Settle*, 260 U.S. 166 (1922), the issue was whether the interstate or intrastate rail rate applied when an interstate shipment was received at one location, re-billed, and sent by rail to another location in that same state. Though not a Carmack Amendment case, the case deals with the distinction between interstate and intrastate commerce:

> The mere fact that cars received on interstate movement are reshipped by the consignee, after a brief interval, to another point, does not, of course, establish an essential continuity of movement to the latter point. The reshipment, although immediate, may be an independent intrastate movement. The instances are many where a local shipment follows quickly upon an interstate shipment and yet is not to be deemed part of it, even though some further shipment was contemplated when the original movement began. Shipments to and from distributing points often present this situation, if the applicable tariffs do not confer reconsignment or transit privileges. The distinction is clear between cases of that character and the one at bar, where the essential nature of the traffic as a through movement to the point of ultimate destination is shown by the original and persisting intention of the shippers which was carried out.

*Id*. at 173-174.

In *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697 (11th Cir. 1986), a Carmack Amendment case in which the issue was whether or not the intrastate leg of an otherwise interstate shipment of foreign goods was governed by that Amendment, the Eleventh Circuit held:

> The nature of a shipment is not determined by a mechanical inspection of the bill of lading nor by when and to whom title passes but rather by "the essential character of the commerce," *United States v. Erie R.R. Co.*, 280 U.S. 98, 102, 50 S.Ct. 51, 53, 74 L.Ed. 187, 206 (1929), reflected by the "intention formed prior to shipment,

> pursuant to which property is carried to a selected destination by a continuous or unified movement," *Great N. Ry. Co. v. Thompson*, 222 F.Supp. 573, 582 (D.N.D. 1963) (three-judge district court).
>
> It is well-settled that, in determining whether a particular movement of freight is interstate or intrastate or foreign commerce, the intention existing at the time the movement starts governs and fixes the character of the shipment.... [T]emporary stoppage within the state, made necessary in furtherance of the interstate carriage, does not change its character. *State of Texas v. Anderson, Clayton & Co.*, 92 F.2d 104, 107 (5th Cir.) (shipper intended cotton for export when cotton sent from Rochester, Texas to Houston; thus not an intrastate shipment), *cert. denied*, 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 578 (1937).

*Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 699 (11th Cir. 1986).

A reading of these cases indicates that, if the intent of the carrier against whom damages are alleged was not of an interstate nature, the shipment was intrastate, and the Carmack Amendment does not apply. In the instant case, if the plaintiffs had gone to Johnnie's Homes, picked out a Fleetwood Home from a catalog, and Zachero had moved it from Fleetwood's plant in Georgia to the plaintiffs' lot in Pell City, the Carmack Amendment might well apply, and removal would be proper. Here, however, Johnnie's Homes ordered a unit from Fleetwood in Georgia, the plaintiffs went to Johnnie's and purchased that unit, and then Zachero moved it from Johnnie's lot in Pell City to the plaintiffs' lot in Pell City. The shipment was purely intrastate, and the Carmack Amendment is inapplicable.

*Swift* is clearly distinguishable from this case. From the beginning, Swift was the designated purchaser. The plaintiffs here did not purchase from Fleetwood or any other out-of-state firm. This case is no different than would be a case where A, an Alabama furniture dealer, purchases furniture in North Carolina for resale in Alabama and A sells the furniture to B, an Alabama resident, and A has C, an Alabama carrier, deliver the furniture to B. The motion to remand will be granted.

This 8th of November, 2005.

/s/ Robert B. Propst

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**